**312**

### LYONS v. CAPITAL TRANSIT CO. et al.
### No. 703.

Municipal Court of Appeals for the
District of Columbia.
Nov. 24, 1948.

Julius H. Lyons, pro se.

Frank F. Roberson, of Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This is an appeal from a judgment for the defendant company entered upon a jury verdict below. The appellant, Julius H. Lyons, sued the Capital Transit Company and certain named individuals, the company's agents. He asked payment of back wages and restoration to his job. The defendant's answer denied that there was an enforceable agreement to reinstate. Appellee three times moved for directed verdict: on plaintiff's opening statement, at the close of his evidence and at the conclusion of all the evidence. Each of these motions was denied as to the Capital Transit Company, and the case submitted to the jury. A motion for directed verdict in favor of the individual defendants was granted. While an appeal was taken from the entire judgment, only errors regarding the judgment for the company have been urged.

Appellant had been a mechanic in the employ of the transit company. According to the testimony of witnesses for the company, he was a valuable and satisfactory employee. In July of 1946 he went on vacation but did not return at the expected time. Inquiry was made and it was found that he was in a State hospital in Maryland, from which he was not discharged until November. Thereafter he asked for and was returned to his job. However, it soon appeared that he acted differently from other employees. Often he returned to work after the completion of his shift to continue an unfinished job. His foreman on occasion protested and asked him to leave the work. It was testified that his relations with his fellow employees were not entirely harmonious. These conditions culminated in an alleged altercation with a fellow employee, Carter. Lyons, in response to a critical remark concerning his work, straightened up from a stooped position with a hammer in his hand and cursed at Carter. The exact details of the incident are disputed, but Carter testified that he left the scene because he was afraid Lyons "might hit me with it" (the hammer). Carter's story was corroborated by two other employees who witnessed the incident. As a consequence of this incident, Lyons was not allowed to go to work on April 9, 1947. Upon protest he was referred to the Capital Transit offices in Georgetown. He went there and a conversation resulted with Messrs. Dunnigan

and Feldman, two supervisory employees, concerning the termination of Lyons' employment. There is a sharp conflict as to what took place at this interview. Lyons' version is that the charge was that he had raised the hammer "at" his fellow employee, he was promised this charge would be investigated, and if it was untrue he would be given his job back and paid for time lost from work. Feldman testified he had suspended Lyons on that occasion and had told him that various reports about him had been made and that "if the investigation proved the charges were true" he "would be fired as of that time and if they were not true" he "would be taken back and paid for the time he was off."

On May 5, 1947, following such investigation, Lyons was sent a polite and carefully couched letter by the Capital Transit Company's director of personnel wherein he was advised that it appeared desirable from Lyons' viewpoint to again place himself under competent care and that it would be inadvisable for him to attempt to resume work with the company. Thereafter, on May 9, Lyons did return to the Maryland state hospital and was not in the District of Columbia until after September 24, when he left the hospital. He then applied to the defendant company for employment. He was advised by letter of December 5, 1947, as follows:

"We regret to advise that we shall not have work for you because, in our opinion, based on the advise of physicians, it would be best if you found work in a small shop where you would have more satisfactory, from your point of view, surroundings, and less strain and stress."

However, Lyons continued his efforts to regain his job and upon refusal brought this action. His position in effect is that the charge that he raised the hammer "at" the other employee had to be proved in a legal sense, that otherwise he would be taken back, and that the charge was never so established.

No contract of employment between Lyons and the defendant company was pleaded or proven.

The appellant's case, therefore, must turn on the alleged agreement to re-employ, which he insists arose from the conversation of April 9. Accepting the jury's determination of the facts, as we are bound to do, it results that the incident could amount to no more than a suspension from work, with an agreement to take him back if the company found all the complaints against him unfounded. The first letter definitely refused to re-employ him. Thus when this fact is considered together with the above-quoted letter of December 5, although they were polite and tactful, the unmistakable result is reached that the company concluded the charges against him had been established to its satisfaction, that his services were no longer required, and that he was told of such decision.

Appellee contends that in the case of a contract for employment of indeterminable length and where there is no statute to the contrary, the contract is terminable by either employer or employee at will without liability to the other party. We understand this to be the law.[1] Even if we assume that the evidence showed a definite understanding between the parties to re-employ Lyons under certain conditions, it is still true that such conditions (clearing him of all charges against him) were never met to the satisfaction of the employer, and hence that the company was not bound to re-employ him after the suspension. Moreover, there was no consideration for the alleged agreement to re-employ him. It results that the verdict of the jury for defendant was supported by adequate evidence and under such circumstances it is fundamental that the evidence may not be reweighed on appeal.

We have examined plaintiff's various assignments of error as to the trial court's

[1] National Labor Relations Board v. Fansteel Metallurgical Corp., 306 U.S. 240, 254, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599; Associated Press v. National Labor Relations Board, 301 U.S. 103, 132, 57 S.Ct. 650, 81 L.Ed. 953;

E. Anthony & Sons v. National Labor Relations Board, 82 U.S.App.D.C. 249, 163 F.2d 22, certiorari denied 332 U.S. 773, 68 S.Ct. 89; J. E. Hanger, Inc., of Washington, D. C. v. Fitzsimmons, 50 App.D.C. 384, 273 F. 348.

instructions to the jury but conclude that such instructions correctly stated the law of the case.

Affirmed.