**John SULLIVAN, Appellant,**

v.

**HERITAGE FOUNDATION et al., Appellees.**

**James T. McKENNA, Appellant,**

v.

**HERITAGE FOUNDATION et al., Appellees.**

**Nos. 12784, 12839.**

District of Columbia Court of Appeals.

Argued June 27, 1978.

Decided March 16, 1979.

Louis Wilson Ingram, Jr., Washington, D. C., for appellant Sullivan.

James T. McKenna, pro se.

William I. Althen, Washington, D. C., with whom John L. Kilcullen, Washington, D. C., was on brief, for appellees.

Raymond D. Hurley, Washington, D. C., for appellee Mote.

Before GALLAGHER, YEAGLEY and MACK, Associate Judges.

GALLAGHER, Associate Judge:

James T. McKenna and John Sullivan appeal[1] from grants of summary judgment for the Heritage Foundation (Heritage) on breach of contract claims and on McKenna's individual cause of action for malicious injury to business reputation. Their appeal requires us to consider (1) whether the trial court erred in ruling, as a matter of law, that the hirings were for an indefinite period, terminable at the will of either party, and (2) whether appellant McKenna's evidence presented a jury question on his claim of malicious injury to reputation.[2] Finding the summary judgments against appellants properly granted, we affirm.

1. The two proceedings have been consolidated on appeal.

2. Appellants also assert procedural irregularities which, they allege, occurred at the pretrial stages and require reversal of the summary judgments. We find their claims of error without merit.

3. McKenna's complaint alleges he is entitled to salary for the remaining 10 months and 3 weeks of his contract (April 20, 1976 through March 15, 1977). Sullivan seeks $27,000 in remaining salary. At a $36,000 annual salary, however, this means Sullivan claims only 9

A. Breach of Contract

Until their dismissal on April 3, 1976, McKenna and Sullivan were employed by Heritage, a tax-exempt corporation engaged in public interest research. McKenna's duties as General Counsel of Heritage began on February 1, 1974, when he transferred from the Center for Public Interest, the predecessor of Heritage, at the request of a major donor. Sullivan's employment, in the capacity of Administrator and Funding Director, commenced on January 1, 1975, at a salary of $36,000 per annum. He moved from Boston to take the job, in reliance on a representation that the Heritage by-laws set an annual contract for all officers. According to Sullivan's deposition testimony,

[i]t was my understanding that I would remain at the Heritage Foundation until such time as I would either retire or for whatever reason, left on my own or if I were, in fact, to breach my contract with the Heritage Foundation, I suppose they'd have the right to terminate me.

Appellants contend that as officers and key employees of Heritage they were beneficiaries of annual contracts running from one Board of Trustees meeting to the next. (The annual meetings were held on March 15.)[3] This contract, they allege, was breached by their dismissal without cause.

In denying Heritage's motion for judgment on the pleadings against plaintiff Sullivan based on failure to set forth a factual basis for a contract, the trial court stated:

While there appears to be a serious question concerning the existence of a contract, if plaintiff is only relying on the by-laws and the applicable statute,[4] such

months' salary due (April 3, 1976 to January 3, 1977), suggesting that the contract he relies on extended through the end of 1976.

4. Paragraphs 12 and 13 of the Heritage By-Laws, relied upon by appellants, provide:

12. The Board of Trustees shall choose a Chairman, a President, a Secretary, and a Treasurer, and it may choose such other officers as the by-laws shall from time to time provide or the activities of the corporation may require . . . .

13. The Board of Trustees may appoint such other officers as may be deemed neces-

a reliance is not clear from the complaint. The fact that the plaintiff cites the by-laws does not prevent him from relying upon a written or oral contract entered into by the Board pursuant to the authority granted in the by-laws . . . . It is certainly not clear from the complaint, that the plaintiff relies only on the statute and the by-laws.

After defendant's motion for summary judgment, however, the trial court concluded:

Subsequent discovery has made it clear that plaintiff does in fact rely solely upon the by-laws and the provisions of the D.C.Code and he admits that no written or oral contract for a fixed period of employment was ever entered into between him and the defendant.

■ In reviewing a grant of summary judgment, it is our responsibility to determine whether there was any issue of fact pertinent to the ruling and, if not, whether the substantive law was correctly applied. See Super.Ct.Civ.R. 56; 6 J. Moore, Federal Practice and Procedure ¶ 56.27[1]. A summary judgment is appropriate only where no genuine issue of material fact exists. See, e. g., Bennett v. Kiggins, D.C.App., 377 A.2d 57, 59 (1977). Thus, to survive the summary judgment motion, plaintiffs need only show that "there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." International Underwriters, Inc. v. Boyle, D.C.App., 365 A.2d 779, 782–83 (1976).

Having admitted during discovery that no fixed-term oral or written contract existed, on appeal appellants rest their claims on implied contracts. They contend that the employment term of an implied contract is a question of fact for a jury and point to the by-laws, statute and other circumstances to support a finding of an implied annual contract.

■ The duration of a contract may be a question of fact when the evidence is conflicting. See, e. g., Burgess v. Grooms, D.C.Mun.App., 81 A.2d 338, 339 (1951). Rather than establishing a factual dispute, however, appellants' pleadings, affidavits and depositions are in agreement with defendant's statement of uncontested material facts as adopted by the trial court. There is no conflicting evidence of an agreement to employ for a fixed period or of circumstances from which such an agreement could be inferred. Compare Heflin v. Silverstein, 132 U.S.App.D.C. 7, 405 F.2d 1075 (1968) (oral agreement to render services as counsel for one year allegedly breached. Motion for summary judgment denied because there was "sharply conflicting evidence respecting highly material facts."). More than conclusive allegations in the pleadings or appellants' belief in the permanence of employment are necessary to raise a material issue of fact precluding the grant of summary judgment. See, e. g., Bloomgarden v. Coyer, 156 U.S.App.D.C. 109, 479 F.2d 201 (1973).

■ Given the undisputed nature of the facts in this case,[5] the propriety of the summary judgment rests on the trial court's interpretation of law. The issue boils down to whether the facts, statute and by-laws establish an annual contract as a matter of law. Initially, the existence of an employment contract must be distinguished from the duration of the employment period pro-

sary, such officers to be appointed either temporarily for a stated time or for the ensuing year and until the next annual meeting of the Board of Trustees . . . .
Appellants also rely on D.C.Code 1973, § 29–1025, which states:
Any officer or agent elected or appointed may be removed by the persons authorized to elect or appoint such officer or agent whenever in their judgment the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent shall not itself create contract rights.

5. A dispute exists as to whether appellants were officers of Heritage. However, status as an officer does not bear on contract right to employment, which must still be established, since election or appointment for a term does not alone support an action for damages. See D.C.Code 1973, § 29–1025.

vided by a contract. At a minimum, Heritage promised to pay for services when rendered at a specified salary rate, and appellants promised to render services. Unless otherwise agreed, however, mutual promises to employ and to serve at the agreed rate create obligations terminable at will by either party. *See, e. g., Taylor v. Greenway Restaurant, Inc.,* D.C.Mun.App., 173 A.2d 211 (1961); *Lyons v. Capital Transit Co.,* D.C.Mun.App., 62 A.2d 312 (1948); 2 Restatement (Second) of Agency § 442 (1958). It has been long settled in this jurisdiction that

> where no such intent [to enter into a contract for a fixed period] is clearly expressed and, absent evidence which shows other consideration than a promise to render services, the assumption will be that—even though they speak in terms of "permanent" employment—the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party. [*Littell v. Evening Star Newspaper Co.,* 73 App.D.C. 409, 411, 120 F.2d 36, 37 (1941).]

▪ The presumption that a hiring unaccompanied by an expression of time is at will can be rebutted by circumstantial evidence that the parties intended employment to be for a fixed period. *See, e. g., Singh v. Cities Service Oil Co.,* 554 P.2d 1367, 1368 (Okl.1976); *School Committee of Providence v. Board of Regents for Education,* 112 R.I. 288, 308 A.2d 788, 790 (1973). Such an intention may be gleaned from the facts and circumstances of the case and the conduct of the parties. *See, e. g., Richardson v. J. C. Flood Co.,* D.C.App., 190 A.2d 259 (1963).

▪▪ In this case, however, appellants' depositions show that neither considered himself bound to Heritage for a fixed period.[6] The fact that appellants were employed at a salary rate measured on an annual basis does not, of itself, manifest agreement that the employment was to continue for that unit of time. *See, e. g.,* Restatement (Second) of Agency, *supra; Henkel v. Educational Research Council of America,* 45 Ohio St.2d 249, 344 N.E.2d 118 (1976). The modern rule is that in the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of employment, is not a contract for one year but is terminable at will by either party.[7] *See, e. g., Henkel, supra* 344 N.E.2d at 119; *Horizon Corporation v. Weinberg,* 23 Ariz. App. 215, 531 P.2d 1153, 1155 (1975).[8]

Appellants' reliance on Heritage by-laws and D.C.Code 1973, § 29–1025, is misplaced. The by-laws merely authorize appointment of an officer for a stated term, or in the absence of specification, until the next Board meeting. The statute unambiguously states that appointment or election for a term does not, by itself, create contract rights. The purpose of § 29–1025, like the similarly worded § 29–919a for business corporations, was to insure preservation of an officer's or agent's existing contract rights while permitting removal when in the corporation's best interest. Model Business Corp. Act Annot. 2d § 51, ¶ 2 (1971).

▪ Thus, even assuming the existence of mutual promises to employ and to serve, there is no factual or legal basis to support appellants' claim that the hirings were for a definite period.[9] Either party was privi-

---

**6.** When asked whether in March 1976 he anticipated being with Heritage in July 1976, McKenna answered no, he anticipated having a public interest law firm. (McKenna Dep.Tr.54; R. 96.) For Sullivan, permanent employment meant forever or "until such time as [he] . . . for whatever reason, left." (Sullivan Dep. Tr.91; R. 519.)

**7.** The fact of the matter is that appellants' employment with Heritage lasted for *more* than one year.

**8.** In *Horizon Corporation, supra,* the court held relocation expenses paid by the employer, coupled with a specified annual salary, did not show anything more than employment agreement of indefinite duration terminable at will.

**9.** Even if appellants established an initial agreement to employ for a year, this would be of no benefit unless they could also establish renewal of the contract for another year.

leged, therefore, to terminate the employment relationship at any time. We conclude the summary judgments were properly granted.

### B. Appellant McKenna's Intentional Tort Claim

Appellant McKenna's individual claim against Heritage President Frank Walton arises out of Walton's failure to pay a court reporter for copies of a transcript ordered by McKenna allegedly in connection with his duties as General Counsel of Heritage. McKenna alleges that the failure to pay was done with malicious intent to harm his reputation and career as an attorney, resulting in a judgment rendered against him in Virginia for the amount of the invoice.

Deposition testimony indicated that the invoice was not presented by McKenna for payment until after he left Heritage. The record includes correspondence between Walton and McKenna seeking to establish the purpose of the expenditure, and indicating willingness to pay when McKenna demonstrated that the expense was incurred on behalf of Heritage. McKenna never responded to Walton's request for information.

A prerequisite of appellant's action is a showing of intentional interference with his economic relations, present or prospective. See Prosser, Torts § 130 at 953 (4th ed. 1971). Appellant failed to demonstrate that appellee's action was motivated by malice, however, or by an intent to harm plaintiff. In fact, appellant's uncooperativeness delayed payment. Even if some element of ill will were shown, appellee had a legitimate business purpose in seeking an explanation for the expenditure.

There being an absence of facts to show malicious or intentional injury to appellant's reputation, we conclude summary judgment was properly granted.

*Affirmed.*