**WASHINGTON WELFARE ASSOCIATION, INC., et al., Appellants,**

v.

**Zefferine G. WHEELER, Appellee.**

**No. 82–1435.**

District of Columbia Court of Appeals.
Argued Dec. 13, 1984.
Decided Aug. 12, 1985.

---

J. Leon Williams and A. Franklin Anderson, Washington, D.C., were on brief for appellants.

Max M. Goldberg, Washington, D.C., for appellee.

Before NEBEKER and MACK, Associate Judges, and GALLAGHER, Associate Judge, Retired.

NEBEKER, Associate Judge:

Appellee sued appellants, Washington Welfare Association, Inc., a non-profit corporation doing business as Southeast Neighborhood House, and its executive director, Laplois Ashford, for breach of contract, tortious discharge, and libel and slander. The trial court instructed the jury that they should not consider the tortious discharge claim if they found for appellee on the breach of contract count.[1] The jury later returned a verdict of $26,000 against appellants for breach of contract and found for appellants on the libel and slander count. Appellants appeal from the trial court's denial of their motions for directed verdict and for dismissal, for judgment notwithstanding the verdict or, in the alternative, for a new trial or remittitur. In substance, appellants argue (1) that the trial judge erred as a matter of law in allowing the jury to determine that the employer's personnel manual was part of the employment contract between appellants and appellee; and (2) that there is sufficient evidence to support the jury's determination regarding the terms of that contract and the damages due appellant for its breach. We affirm both as to liability and damages.

I

Southeast Neighborhood House (SENH) hired appellee Zefferine G. Wheeler as project director of its nutrition program for the elderly. She served in this position from January 2, 1974, until she was discharged on February 13, 1979. Mrs. Wheeler coordinated SENH's program for providing a daily balanced meal for elderly residents at several sites in the District of Columbia.[2] To support the program, SENH secured grants of government funds and funds raised by foundations such as the United Way. Each participating elderly person who could afford to do so was asked to contribute 25 cents to help defray the cost of the meal. SENH used the money collected to provide additional meals beyond those covered by formal funding.

In 1978 Mrs. Wheeler was instrumental in uncovering embezzlement of those contributions by SENH's business manager, who had been hired by Mr. Ashford. Mr. Ashford discharged that employee in July 1978. On February 9, 1979, a Friday, Mr. Ashford learned that Mrs. Wheeler's husband—still apparently believing there were irregularities with the funds for his wife's program—had approached deputies to the Mayor to alert them to the problem. Mr. Ashford placed Mrs. Wheeler on administrative leave the following Monday morning, February 12, pending his investigation of the matter.[3] Mrs. Wheeler did not accept the memorandum notifying her that

---

1. Because the jury never reached the tortious discharge count, we find it unnecessary to reach appellants' argument that the trial judge erred in submitting that claim to the jury.

2. The program Mrs. Wheeler coordinated was subsequently expanded to include geriatric daycare and other support services for the elderly.

3. Mr. Ashford testified that he had initially believed Mrs. Wheeler had joined her husband in approaching the Mayor's deputies.

she was on administrative leave. Mr. Ashford told her to leave the premises. She remained, however, and attended a staff meeting at a nearby site later in the day.

On February 13, he sent her a certified letter notifying her that she had been terminated for misconduct, effective immediately. She received the letter on February 15 and requested a grievance hearing by letter dated February 22, 1979.[4] She was not granted the hearing. She then applied for the position that corresponded to her old one, left vacant under a reorganization of SENH that terminated all employees—at least technically—effective February 26, 1979. Mr. Ashford informed her by letter that her application for the position had not survived the initial screening of applicants. Mrs. Wheeler subsequently filed suit.

## II

Appellants argue that the trial judge erred as a matter of law in denying their motions for directed verdict and for dismissal, instead permitting the jury to determine whether the SENH personnel manual was incorporated into the employment contract. Appellants contended at trial that Mrs. Wheeler's contract was fully set forth in the letter of hire, which stated her starting salary but specified no period of employment. Appellants argue that appellee's employment contract was therefore of indefinite duration, terminable by either party at will. We disagree.

■ "The presumption that a hiring unaccompanied by an expression of time is at will can be rebutted by circumstantial evidence that the parties intended employment to be for a fixed period." *Sullivan v. Heritage Foundation*, 399 A.2d 856, 860

(D.C.1979). An employer's personnel manual is evidence of the terms and conditions both employer and employee accept as part of the agreement. *See Green v. District of Columbia Unemployment Compensation Board*, 273 A.2d 479, 480 (D.C.1971) (where collective bargaining contract did not provide for time off to take care of personal business, such provision could be incorporated into contract by evidence from employer's delivery service manual showing that company recognized such a need and established procedures to provide for it). Whether a personnel manual creates contractual rights for the employee is a question for the jury. *See Bason v. American University*, 414 A.2d 522, 524–25 (D.C. 1980).

Here, SENH's Personnel Policy and Procedures Manual sets forth a distinction between a probationary and permanent employee. Although a probationary employee—one in the first 90 days of his employment—may be summarily discharged, a permanent employee may only be terminated for good cause so long as the project to which he is assigned remains funded.[5] Even though these provisions do not create a contract that expires on a specified date, they are evidence of the intent of the parties with respect to the terms of the contract, an issue of fact on which the parties to litigation may disagree. *Hodge v. Evans Financial Corporation*, 228 U.S.App. D.C. 161, 163, 707 F.2d 1566, 1568 (1983) (applying contract law of the District of Columbia).

■ The rule is that unless the parties reveal an intent to enter into a contract for permanent employment, it will be regarded as terminable at will. *Sullivan v. Heri-*

---

4. SENH received the letter on February 26, 1979. Stipulated into evidence were records of the National Climatic Center showing that a heavy snowfall had immobilized the area at the time in question, accounting for some delay in mail delivery.

5. The provision regarding employment for the duration of the project was in the 1973 Manual, in effect when Mrs. Wheeler was hired. Mr. Ashford testified at trial that employment "can

only be permanent so long as that grant is in place." The Manual also imposes contractual obligations upon the permanent employees. Under the Manual, permanent professional and program staff employees are obliged to give one month's written notice of resignation. With appropriate notice, the employee receives payment for the full amount of accrued annual leave, not to exceed 20 days.

*tage Foundation, supra,* 399 A.2d at 860 (citing *Littell v. Evening Star Newspaper Co.,* 73 App.D.C. 409, 410, 120 F.2d 36, 37 (1941)). While the contract here had no specified date of termination, the Manual evidences intent of the parties that specific preconditions had to be met before employment could be terminated; the contract was therefore distinguishable from a pure "at will" contract. *See Hodge, supra,* 228 U.S.App.D.C. at 163, 707 F.2d at 1568. A jury could decide based on the evidence whether an event had occurred that would terminate the contract—*e.g.,* that specific acts of the employee constituted behavior giving the employer good cause to discharge her, or whether the funding supporting the employee's project was no longer in place.[6] Thus, the trial judge did not err in permitting the jury to determine whether the evidence here revealed such intent. *See District of Columbia v. Gandy,* 450 A.2d 896, 900 (D.C.1982), *modified on other grounds,* 458 A.2d 414 (D.C.1983). Accordingly, the trial court did not err in denying appellants' motion for judgment n.o.v. *See Washington Welfare Association, Inc. v. Poindexter,* 479 A.2d 313, 315 (D.C.1984) (citing *Lewis v. Washington Metropolitan Area Transit Authority,* 463 A.2d 666, 669 (D.C.1983)).[7]

III

 Moreover, there is evidence to support the jury's determination that SENH breached its employment agreement with Mrs. Wheeler. There was evidence from which the jury could have reasonably concluded that appellee's dismissal was not for just cause, that she had a right to the grievance hearing SENH denied her, and that SENH therefore breached her employment contract.

First, as to appellee's alleged misconduct and insubordination, the jury heard conflicting testimony. Mr. Ashford identified her misconduct as refusal to accept the memorandum placing her on administrative leave, her failure to leave SENH's premises, and "disruptive" behavior at a staff meeting. Appellee testified that she had not made allegations to deputies of the Mayor[8]—the behavior for which the administrative leave was imposed; that she had had occasional past disagreements with Mr. Ashford—always amicably and informally resolved, and that she had been attempting to explain to him on February 12 that he had been misinformed regarding her activities. The afternoon meeting appellee attended was not literally on SENH's premises, but in a nearby church whose facilities were made available to SENH for the meeting. Mr. Ashford testified that she had

---

6. The 1977 Manual, in effect when Mrs. Wheeler was discharged, defines a permanent employee as "one who is employed by SENH without limit as to time in a position provided for in a budget for SENH or a specific program approved by the Board of Directors."

7. Appellants contend that the verdict form was an erroneous statement of the law and confusing to the jury. The form was as follows:

A. What type of employment contract did Mrs. Wheeler have with Southeast House?
_____ Employee at will
_____ Employee for fixed time and conditions
B. If you find that Mrs. Wheeler had a contract with fixed terms and conditions, how do you find on her claim for breach of that contract?
_____ For Mrs. Wheeler
_____ For Southeast House and Laplois Ashford
Appellants claim that the shift from "time" in part A to "terms" in part B was serious error.

We note that counsel for both parties had typed copies of the verdict form before it was sent to the jury. The trial judge invited the comments and suggestions of counsel. Appellants' counsel never objected to the verdict form, nor suggested changes as to that portion. When the jury, during deliberations, sent in a question regarding the form, the trial judge discussed her proposed answer with counsel. She stated that part A was designed to permit the jury to decide whether Mrs. Wheeler's employment contract was terminable at will or only under certain conditions, that "time" in part A could better be read as "terms and conditions" and that she would so instruct the jury. Appellants' counsel objected to that proposed answer, but not to the verdict form. The trial judge did not err in her statement of the law, and her answer to the jurors allowed them to continue deliberating and reach a verdict.

8. That fact was not contested at trial.

been disruptive. Appellee testified that she had asked questions of general concern at the meeting, and had not made reference to her situation. No other SENH staff member who testified regarding the meeting unequivocally stated that appellee had been disruptive; generally, the witnesses could not remember the event clearly.

Second, as to denial of appellee's request for a grievance hearing, the jury considered varying evidence. The Manual specifies that an employee has five working days to apply for a hearing. A permanent employee who properly requests such a hearing has a right to it before discharge becomes final. The jury had documentary evidence of the severe weather conditions at the relevant time, testimony that Mrs. Wheeler's letter may have been timely sent—if not received—within the five-day period, and evidence that Mr. Ashford had initially written her that she would receive her hearing and his later reversal of that decision on the basis that her job had been "abolished" in SENH's reorganization. On this record we hold that factual issues were presented which the jury permissibly resolved in appellee's favor. The trial judge therefore did not err in denying appellants' motions for directed verdict, dismissal and judgment n.o.v. *See Poindexter, supra,* 479 A.2d at 315.

### IV

 Finally, appellants argue that the verdict was excessive. We disagree. The jury heard testimony from Mr. Ashford that "permanent" employment was employment that continued so long as the grant supporting the position was in place and that SENH's program for the elderly had continued uninterruptedly in substantially the same form it had taken before Mrs. Wheeler's discharge. The jury heard evidence that, although SENH had reorganized, all but five employees were rehired,[9] that—according to Mr. Ashford—Mrs. Wheeler's program was one of the better run, and that Mrs. Wheeler was working towards her Master's degree in an evening program at the time she was dismissed.[10]

The trial judge did not err when she instructed the jury that, should they find for Mrs. Wheeler on the breach of contract issue, she would be "entitled to the salary that would have been paid during the remainder of the term, reduced by the income which ... she has earned." *See District of Columbia v. Jones,* 442 A.2d 512, 524 (D.C. 1982). Before the jury was stipulated evidence regarding Mrs. Wheeler's salary from SENH, her earnings from part-time work since her dismissal and her salary from the full-time position she held at the time of trial. On the record before us, we cannot say that the $26,000 sum is excessive. *See Poindexter, supra,* 479 A.2d at 317 (citing *District of Columbia v. Jones, supra,* 442 A.2d at 524).

*Affirmed.*

9. A memorandum from Mr. Ashford to all SENH staff, dated February 5, 1979, admitted into evidence, says of the reorganization then in progress:

Many of the changes will be functional in nature only. It is my intention that current employees will have first priority for those positions for which they qualify. Every attempt will be made to guarantee placement for others which [sic] might be displaced by the re-organization.

The exact number of staff members is not in the record. Mr. Ashford testified, however, that there were 12–14 project directors. Mrs. Wheeler's project had 20–23 full and part-time staff.

10. Mr. Ashford testified that the program director hired after the reorganization did have a Master's degree and that having personnel with such credentials as advanced degrees would improve SENH's chances of securing grants.