Paula NICKENS, Appellant,

v.

**LABOR AGENCY OF METROPOLITAN WASHINGTON, et al., Appellees.**

No. 89–895.

District of Columbia Court of Appeals.

Submitted Oct. 16, 1991.
Decided Dec. 13, 1991.

Harley J. Daniels, was on the brief, for appellant.

William W. Osborne, Jr., and Elizabeth J. Head, were on the brief, for appellees.

Before ROGERS, Chief Judge, and TERRY and WAGNER, Associate Judges.

WAGNER, Associate Judge:

This appeal arises out of a complaint for wrongful discharge filed by appellant, Paula Nickens, against her former employer, Labor Agency of Metropolitan Washington (Labor Agency or the Agency), and its president, Joslyn N. Williams. The trial court granted summary judgment for appellees. Appellees' summary judgment motion was based upon its claim that the undisputed facts showed that appellant was laid off due to fiscal cutbacks as permitted under the Agency's personnel policies and that appellant was an at-will employee, terminable for any reason or for no reason at all at any time. We conclude that material issues of fact are in dispute which preclude summary judgment in this case; therefore we reverse.

I.

In support of their motion for summary judgment, appellees provided an affidavit setting forth the following facts, which they contend to be undisputed. Appellant was hired on May 9, 1984 by the executive director for the Labor Agency at the request of the District of Columbia Department of Employment Services (DOES), where she had been employed previously.

According to appellees, appellant was laid off due to a funding cutback in the program for which she was working, the Displaced Workers Program. The program was funded by DOES. Mr. Daniel Kiernan, the former Director of the Agency, stated in his affidavit that appellant understood that her position was conditioned on continuation of funding for the program. During the first six months of employment, appellant was a probationary or "conditional" employee under the Agency's personnel policies. According to Mr. Kiernan, the displaced workers contract was to expire on September 30, 1984, and he anticipated no further extensions. Therefore, he sent appellant a letter notifying her that she was being laid off for that reason. Although a new Displaced Workers Program was established in December 1984, the program differed in scope and concept from the previous program. Employees for the new program were hired by its new administrator, and appellant did not apply for a position. According to Mr. Kiernan, neither he nor anyone on behalf of the Agency promised appellant permanent employment. Additionally, the personnel policies provided for termination due to lack of funding. In appellees' view, appellant conceded at a deposition that the personnel policies did not form a contract. Thus, appellees contended that appellant's allegations were factually deficient to support her claim.

Appellees argued in their motion for summary judgment that appellant was an at-will employee whose services were terminable at any time by either party. *See Sullivan v. Heritage Found.*, 399 A.2d 856, 860 (D.C.1979); *see also Taylor v. Greenway Restaurant, Inc.*, 173 A.2d 211 (D.C.1961). According to appellees, absent was probative evidence that the parties intended the personnel policies to create a contract. Moreover, they contended the lay-off which occurred here was in accordance with the Agency's personnel policies. Apparently, the trial court agreed and granted appellees' motion without opinion.

The facts as gleaned from appellant's verified complaint and from deposition references cited present a different picture. Appellee, Mr. Joslyn Williams, was president of the Labor Agency at the time appellant was hired and remained in that position at the time she filed her complaint in this case some three years later. Appellant had an intimate, personal relationship with Mr. Williams for four years prior to taking the job with the Labor Agency. It was Mr. Williams who convinced appellant to leave a permanent position with the District of Columbia government to assist him at the Agency, and he promised her that she would have a job there for as long as he did. Therefore, appellant went to work for the Labor Agency on May 9, 1984.

On September 18, 1984, during off-duty hours and away from the job site, appellant alleges that Mr. Williams assaulted her. The very next day Mr. Williams ordered the executive director of the Agency to place appellant on administrative leave, and he did so on September 19, 1984. On October 1, 1984, the executive director gave appellant a notice of termination to be effective immediately. Although the termination letter specified that the reason for the "lay-off" was the Agency's financial inability to continue the Displaced Workers Program, a representative of the Labor Agency's funding agency stated in deposition testimony that the Labor Agency could continue to spend money for the program subject to reimbursement and that no substantial funding gap occurred for the program. The Agency's director admitted at deposition that the Agency continued to perform work for the program, although it had no contract with its funding source. Evidence was also cited that the Displaced Workers Program remained in operation in October and November 1984, and the Labor Agency was reimbursed by its funding source in December 1984 for out-of-pocket expenditures made for the program. Appellant cited deposition testimony of a witness which showed that even if funding for a program were discontinued, it was the Agency's practice to use its other programs to continue the unfunded program. According to another witness, it was also the Labor Agency's practice to do everything possible to avoid a lay-off. Moreover, appellant contended that she was hired as a

job developer and that she was not working under the program for which the agency claimed it lacked funds.

Mr. Williams admitted that he recommended that appellant be terminated or placed on administrative leave, in part, because of the altercation. Although the executive director maintained that the "layoff" of appellant was due to lack of funding, one witness gave deposition testimony that he heard the executive director say that appellant was terminated because of the altercation with Mr. Williams.

Appellant argues that material factual issues are in dispute with respect to whether the Labor Agency's Personnel Policies Manual gave rise to contractual rights establishing preconditions to termination of her employment which the Labor Agency failed to follow. Appellant also argues that she has set forth a prima facie case against appellee Williams for tortious interference with her employment contract requiring reversal of summary judgment on that claim.

## II.

In considering the grant or denial of a motion for summary judgment, our standard of review is the same as that of the trial court when it considers the motion initially. *Young v. Sherwin–Williams Co., Inc.*, 569 A.2d 1173, 1175 (D.C.1990). Summary judgment is appropriate only if there are no genuine issues of material fact in dispute and if the moving party is entitled to judgment as a matter of law. *Id.; Holland v. Hannan*, 456 A.2d 807, 814 (D.C. 1983); *Nader v. de Toledano*, 408 A.2d 31, 41–42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); Super.Ct.Civ.R. 56(c). "[A] motion for summary judgment should be granted if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the nonmoving party, (3) under the appropriate burden of proof." *Nader*, 408 A.2d at 43. The moving party has the burden of demonstrating the absence of material disputed issues and the right to judgment as a matter of law. *Wyman v.*

*Roesner*, 439 A.2d 516, 519 (D.C.1981). An examination of the pleadings, the affidavit and other relevant documents presented against the law applicable to appellant's claims shows that appellees failed to meet that burden.

## A.

■ We turn first to appellant's claim for wrongful discharge and the law controlling that cause of action. There is a presumption that a hiring not accompanied by an expression of a specific term of duration creates an employment relationship terminable at will by either party at any time. *Sorrells v. Garfinckel's, Brooks Brothers, Miller and Rhoads, Inc.*, 565 A.2d 285, 289 (D.C.1989); *Washington Welfare Ass'n, Inc. v. Wheeler*, 496 A.2d 613, 615 (D.C. 1985); *Sullivan, supra*, 399 A.2d at 860. This presumption can be rebutted by evidence that the parties intended the employment to be for a fixed period, *Sullivan*, 399 A.2d at 860, or subject to specific preconditions before termination. *Washington Welfare*, 496 A.2d at 616. Where the parties intend that preconditions be met before termination of the employment relationship, the arrangement is distinguishable from "a pure 'at will' contract." *Id.* (citing *Hodge v. Evans Financial Corp.*, 228 U.S.App.D.C. 161, 163, 707 F.2d 1566, 1568 (1983)). The facts and circumstances surrounding the hiring and the conduct of the parties may provide evidence sufficient to rebut the presumption. *Sullivan*, 399 A.2d at 860; *Washington Welfare*, 496 A.2d at 615. The question then becomes whether appellant, as she contends, produced in the trial court sufficient evidence to show material factual issues in dispute requiring resolution of her claim that the parties intended a contract and that the Labor Agency breached it. We conclude that she did.

■ Unless parties indicate an intent to enter a contract of employment for a specific term, the employment relationship is terminable at will. *Washington Welfare, supra*, 496 A.2d at 615; *Littell v. Evening Star Newspaper Co.*, 73 App.D.C. 409, 410, 120 F.2d 36, 37 (1941). Evidence

that one gave up government service to take a position may be sufficient to show an intent to contract for permanent employment. *Littell*, 73 App.D.C. at 410, 120 F.2d at 37. Such a contract is not terminable except pursuant to its express terms. *Id.* Here, appellant states in her verified complaint that appellee Williams, the Agency's president, convinced her to leave a permanent position with the District of Columbia government to work for the Agency under the conditions of its personnel policies. Mr. Williams promised appellant that she would have a job as long as he remained with the Agency.[1] This evidence is sufficient to support the claim that a contract was intended and to withstand summary judgment on the issue. However, appellant offered more evidence on the issue. We examine that evidence with reference to the legal decisions affecting its significance.

■ Appellant's principal contentions are that the preconditions to her termination are established by the Agency's Personnel Policies Manual and that the Agency breached the contract in that it failed to follow the provisions. The existence of a contract and its terms, including duration, are separate issues which must be distinguished. *Wemhoff v. Investors Mgmt. Corp.*, 528 A.2d 1205, 1208 (D.C.1987); *Sullivan, supra*, 399 A.2d at 859–60. A contract which makes no provision for termination after a fixed period remains terminable at will. *Sullivan*, 399 A.2d at 860. "Whether the personnel manual creates contractual rights for an employee is a factual question for the jury." *Washington Welfare, supra*, 496 A.2d at 615. Here, the personnel policies provide for each staff member to receive a copy of the manual along with written notice of employment, compensation, and conditions of

employment. The new staff member is required to accept "the position and the Personnel Policies governing his/her employment" in writing. *Id.* The Agency's executive director must then sign the "employee action" form. Such factors provide evidence from which it may be reasonably inferred that the parties intended the manual to establish contractual rights between them. *See id.* at 616.[2] The terms of the manual, at the very least, raise a factual question in that regard.

■ The Agency's personnel policies provide for termination only under the following conditions which are defined as indicated:

*Voluntary Resignation:* This shall be construed as termination at the volition of the employee. A resignation requested by the employer as an alternative to dismissal shall, insofar as employer-employee rights and responsibilities are concerned, be construed as equivalent to dismissal.

*Retirement:* This shall be construed as the termination of employment under a defined retirement plan in effect at such time as the employee has reached retirement age.

*Lay-off:* This shall be construed as removal from a position due to the abolition of the position because of reorganization or fiscal cutbacks.

*Demotion:* This shall be construed as removal from a particular position with an offer of lesser responsibility because of the employee's inability or unwillingness to perform in the position of greater responsibility or the abolition of the position of greater responsibility.

*Dismissal:* This shall be construed as the discharge of an employee because of unsatisfactory job performance.

---

1. Appellant does not contend here that her tenure was to be of greater permanence than provided for under the Agency's personnel policies.

2. We find no merit to appellees' claim that appellant's failure to read the document disposes of the claim that the parties bound themselves to its terms. The general rule is that absent fraud or mistake, one who signs a contract is bound by a contract which he has an opportunity to read whether he does so or not. *Diamond Housing Corp. v. Robinson*, 257 A.2d 492, 493 (D.C.1969). If the policies create contractual rights, appellant would be bound by the terms whether she perused them when received or not. Appellees cannot avoid obligations under the policies because the employee failed to read them.

The procedure to be followed in terminating an employee is also specified in the manual. The executive director is required to:

> give employees a written notice of employment at least thirty (30) days in advance for professional staff members and at least two (2) weeks in advance for supportive staff with the exception of dismissal. An employee may lose his/her right to a notice if his/her termination is classified as dismissal.

Appellees do not dispute that the preconditions set forth in the manual govern the conditions and procedure for termination. Rather, they argue that appellant's discharge is covered under the lay-off provision. Appellant argues that the claimed lay-off was pretextual, as no fiscal cutbacks actually occurred.[3] Appellant pointed to sufficient evidence to demonstrate that a genuine factual dispute exists with respect to this issue. Appellant offered evidence tending to show that the Displaced Workers Program continued on a reimbursable basis. The Agency's policies and practice of absorbing program functions within other programs and avoiding any gap in service as well as any employee lay-offs also provides support for appellant's contention that a fiscal cutback was not the reason for her lay-off. There is some evidence that the program which ap-

pellees contend appellant was employed under continued after her discharge. Additionally, the president of the organization admitted that appellant's discharge was due, in part, to their personal, non-job-related physical encounter which preceded his instructions to dismiss her. Whether appellant's discharge was in fact a lay-off, and thus, consistent with the personnel policies, is a factual issue material to appellant's claim that the Agency breached her rights under the policies. Thus, appellant has pointed to evidence sufficient to demonstrate that the issue is genuinely disputed. Therefore, we conclude that summary judgment should not have been granted on appellant's claim for breach of contract.[4]

### B.

Appellant alleged a second count against appellee Williams captioned "wrongful discharge," but one which actually alleges a cause of action for intentional interference with contractual relations. *See Shea v. Fridley, supra* note 4, 123 A.2d at 361 (nature of cause of action is not determined by its label). Although appellees did not address the claim in their motion for summary judgment, the trial court by its general order, in effect granted judgment on the count in appellee's favor. *See* Super.Ct.Civ.R. 56(d).[5] Appellee's failure to

---

3. Appellees' contention that appellant knew that her position would be available only so long as program funding remained is not dispositive, given the evidence of the availability of funding, albeit on a reimbursement basis, and the continuation of the program. Likewise, appellant's acknowledgment at deposition that the agency notified her that she was laid off, that she had so informed others, and that she was laid off is not dispositive of whether a lay-off occurred within the meaning of the term under the personnel manual.

4. Appellant also sought to assert a claim of wrongful discharge under a tort theory. Appellant does not raise on appeal the entry of judgment against her on a tort theory of wrongful discharge. Therefore, we do not address it, except to observe that this jurisdiction does not recognize a tort action for wrongful discharge except within a narrowly defined exception, *i.e.,* when the discharge is caused solely by the employee's refusal to violate the law. *See Adams v. George W. Cochran & Co.,* 597 A.2d 28, 34

(D.C.1991). Moreover, notwithstanding allegations in count I sounding in tort, appellant's claim is one for breach of a purely contractual duty. *See Shea v. Fridley,* 123 A.2d 358, 361 (D.C.1956) (complaint showing action upon a contract will be considered ex contractu although it seeks ex delicto remedies).

5. Superior Court Civil Rule 56(d) provides in pertinent part:

> *Case not fully adjudicated on motion.* If on motion under this Rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the Court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to

address the claim in its motion for summary judgment may be accounted for in its position that no contract was established; therefore, any action for interference with it would not be viable. *See Sorrells, supra*, 565 A.2d at 289 (the first element of the tort of intentional interference with contractual relations is the existence of a contract). Having failed to show the absence of a contract as a matter of law, appellees cannot complain, as they do, that appellant failed to argue below her right to recover on the theory. Further, in "reviewing a trial court's order granting summary judgment, this court must conduct an independent review of the record." *Spellman v. American Security Bank*, 504 A.2d 1119, 1122 (D.C.1986). Upon examination of the record, we find that the decision granting summary judgment on the second count must also be reversed. We turn next to the elements of that cause of action and the reasons for our conclusion.

■■■ To establish a claim for intentional interference with contract rights, a plaintiff must establish "(1) the existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach." *Sorrells, supra*, 565 A.2d at 289 (citing *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 288 (D.C.1977)). Appellant argues that she offered evidence sufficient to establish a prima facie case. It is appellees' position that appellant has failed to establish the first and second elements. For the reasons stated in Part II. A. of this opinion, we are not persuaded by appellees' argument.

Appellees place undue reliance upon appellant's statement at deposition that the personnel manual was not a contract. The question which prompted this response was objected to on the ground that it called for a legal conclusion. Matters of law are to be determined by the court; consequently,

a question calling for a conclusion of law is improper. *Kukanskis v. Jasut (Estate of Skucas)*, 169 Conn. 29, 362 A.2d 898, 903 (1975); *State v. Ballard*, 394 S.W.2d 336, 340 (Mo.1965). Insofar as the question called for a legal conclusion, it was properly objected to. *See* Super.Ct.Civ.R. 32(d)(3)(B) (errors in form of question at deposition are waived unless seasonably objected to). Appellant has averred as facts that her employment was subject to the conditions specified in the personnel manual and that appellees did not follow the manual's requirements, thus rendering themselves liable to her for any consequential damages. We do not regard appellant's inability to equate the facts with the conclusion that the personnel policies in law form a contract, actionable if breached, as a basis to defeat her claim on summary judgment. Here, appellant acknowledges that the conditions of her employment are governed by the manual, and the manual contains language evidencing its contractual nature. The facts surrounding the parties' intent to be bound by the document will determine ultimately whether there was a contract. *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 547 (D.C.1981). Appellant's legal conclusion notwithstanding, we conclude that she has identified sufficient facts to avoid summary judgment on the question of whether a contract was formed in law.

■ One other issue requires consideration in connection with the second count in the complaint. That question is whether a corporate officer can be held liable for interference with the corporation's contracts. In *Sorrells, supra*, this court held that a person who procures the discharge of another by their common employer for an improper or illegal purpose is not shielded from liability by his or her status as a supervisor or agent of the employer. 565 A.2d at 291. In *Sorrells* we distinguished our holding in *Press v. Howard University*,

which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. The trial court did not enter an order specifying that its order was one granting partial summary judgment and specifying particular issues not in

dispute. Thus, we view its order as one disposing of the whole claim. Indeed, appellate review of partial summary judgment is generally unavailable until all claims have been disposed of. *Cohen v. Owens & Co.*, 464 A.2d 904, 905 (1983).

540 A.2d 733 (D.C.1988), in which we upheld the trial court's grant of summary judgment on a claim of interference with an employment contract alleged against officers of the university. *Sorrells,* 565 A.2d at 291. The basis for the distinction was not only the status of the defendants as officers, but more importantly, the absence of an allegation that the officials acted maliciously. *Id.*

Although the *Sorrells* rule extends only to supervisory employees, its reasoning extends logically to agents of a principal or officers of a corporation. A corporate officer's improper interference with contractual relations of a corporate employee with actual malice or for his own benefit, rather than for the corporation's interest, deserves no protection. In that case, the officer should be viewed as acting in his individual capacity and interest rather than on behalf of the corporation. For these reasons, the rule established in *Sorrells* has been applied to corporate officers and directors. While a corporate officer is privileged to interfere with the corporation's contracts with others so long as he or she acts in good faith and in the corporation's interests, the officer will be personally liable if he acts against the corporation's interest, for his own pecuniary benefit, or with the intent to harm the plaintiff. *Phillips v. Montana Educ. Ass'n,* 187 Mont. 419, 425, 610 P.2d 154, 158 (1980). In *Phillips,* the corporate officers were not held liable because their actions "were within the scope of their employment, designed without malice, and in furtherance of the corporate interests." *Id.* at 425, 610 P.2d at 158. Other jurisdictions have held that the position of corporate officer does not immunize the officer from tort liability in claims for interference with contractual relations. *See Cronk v. Intermountain Rural Elec. Ass'n,* 765 P.2d 619, 623 (Colo. App.1988) (where officer motivated solely by desire to induce breach with plaintiff, interference is improper and actionable); *Hickman v. Winston County Hosp. Bd.,* 508 So.2d 237, 239 (Ala.1987) (corporate officer may be liable for intentional interference with corporation's contractual relations if acting outside the scope of employment or with actual malice); *see also Tye v. Finkelstein,* 160 F.Supp. 666, 667 (D.Mass. 1958). No useful purpose is served by allowing the corporate veil to protect an officer who uses his power to breach a contract solely to serve his own ends. *See Phillips,* 187 Mont. at 425, 610 P.2d at 158. Therefore, we hold that a corporate officer may be held liable for interfering with the contract of an employee of the corporation provided he is shown to have acted maliciously or for his own benefit, rather than for the benefit of the corporation.

■ Whether the corporate officer acted with malice or for an improper purpose is a factual question. *See Cronk, supra,* 765 P.2d at 623 (motivation is a factual question). As such, summary judgment on the issue is rarely appropriate. *See Raskauskas v. Temple Realty Co.,* 589 A.2d 17, 27 (D.C.1991). Appellant has identified sufficient evidence to raise a material issue of disputed facts on the claim. The timing of her discharge, the evidence that there was no reason for lay-off, the admission of the individual appellee regarding the reason for her dismissal, and the admission of the executive director that Mr. Williams had an improper reason for inducing the firing provide a sufficient evidentiary basis to preclude summary judgment. Therefore, the trial court erred in entering judgment for appellee Williams on the claim.

For the foregoing reasons, the judgment of the trial court granting summary judgment on the breach of contract claim against the Agency and interference with contractual relations against the individual appellee is reversed. The decision granting summary judgment for the Agency on a tort theory of liability for wrongful discharge is affirmed.

*Affirmed in part, reversed in part.*