Billy Ray DALE, et al., Plaintiffs,

v.

Harry THOMASON, et ano., Defendants.

Civil Action No. 96–1107 HHG.

United States District Court, District of Columbia.

April 10, 1997.

ing and charter firm, Thomason, Richland & Martens, Inc. ("TRM").

Steven C. Tabackman, Thomas Earl Patton, Jed L. Babbin, Tighe, Patton, Tabackman & Babbin, Washington, for Plaintiffs.

Robert S. Bennett, Amy R. Sabrin, Katharine S. Sexton, Bonnie J. Austin, Skadden, Arps, Slate, Meagher & Flom, Washington, for Defendant; Michael J. Plonsker, Lavely & Singer, Los Angeles, CA, of counsel.

## OPINION

### HAROLD H. GREENE, District Judge.

The complaint in this case arises out of the dismissal of members of the so-called White House Travel Office, which has the responsibility for arranging charter flights, accommodations, and related services for the White House Press Corps and other media personnel who travel with the President, the Vice-President, and the First Lady. Plaintiffs are former employees of the Travel Office;[1] defendants Harry Thomason and Darnell Martens are part-owners of an aviation consult-

## I

### Factual Background

Plaintiffs allege that beginning in early 1993, Thomason and Martens attempted to win for TRM the Travel Office air charter business. The complaint asserts that as part of their plan the defendants sought to secure the dismissal of the Travel Office employees, first by discrediting them through false accusations of illegal activity and then by reporting these activities to top White House officials.

Plaintiffs point particularly to a memorandum drafted by Martens which Thomason forwarded to key White House personnel. This memorandum accused employees of the Travel Office of taking bribes and kickbacks from the airline then providing charter service for the Press Corps. Plaintiffs allege that Thomason approached First Lady Hillary Rodham Clinton and other White House and Administration officials, voiced these suspicions, and lobbied for their dismissal. Because of defendants' efforts, and in the wake of an emerging public scandal over possible corruption in the White House, plaintiffs were fired on May 19, 1993.[2]

The complaint herein states two causes of action: (1) intentional interference with employment relationship; and (2) intentional infliction of emotional distress. The matter presently before the Court is defendants' motion to dismiss, plaintiffs' opposition, and defendants' reply. The Court held a hearing on the motion on March 21, 1997.

---

1. Billy Ray Dale, former Director of the White House Travel Office, Gary Wright, Barnaby Brasseux, John Dreylinger, Ralph Maughan, John McSweeney, and Robert Van Eimeren.

2. For purposes of the motion to dismiss, the Court will take these allegations to be an accurate representation of what occurred. However, the politically charged events have produced several alternative explanations for the discharge of the Travel Office staff—genuine dissatisfaction with their work, their assumed closeness with the preceding Administration, the political controversy itself, and indications of corruption and mismanagement in the Travel

Office. As concerns the last issue, the Travel Office Director Billy Ray Dale was tried and acquitted of criminal charges. That matter, of course, was resolved under a beyond-a-reasonable-doubt standard; in this civil action plaintiffs have the burden of proof.

In their Memorandum in Support of Defendants' Motion to Dismiss ("Memorandum") defendants included a lengthy explanation of alleged political chicanery involving Mr. Dale and members of Congress. Plaintiffs have moved pursuant to Fed.R.Civ.P. 12(f) to strike this section of the Memorandum; that motion will be granted.

## II

### *Motion to Dismiss*

The standard to be applied in reviewing a motion to dismiss for failure to state a claim is well established. For purposes of determining whether plaintiffs have failed to state a cause of action, the factual allegations of the complaint must be taken as true, and ambiguities or doubts must be resolved in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Despite this liberal standard, the complaint must set forth sufficient information to suggest that there exists a recognized legal theory upon which relief may be granted. A court must dismiss a complaint where, assuming its factual allegations to be true, the plaintiffs have failed to establish a right to relief based upon those facts. *Gregg v. Barrett*, 771 F.2d 539, 547 (D.C.Cir.1985). In that regard, the defendants must show that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *In re Swine Flu Immunization Prods. Liability Litigation*, 880 F.2d 1439, 1442 (D.C.Cir.1989) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

## III

### *Interference with Employment Relationship*

Plaintiffs' primary claim is that defendants interfered with their employment relationship with the White House. It is defendants' response that no cause of action for intentional interference with an employment relationship can be maintained because as "at-will" employees plaintiffs lack standing to bring such a claim.

█ A plaintiff seeking relief under District of Columbia law for intentional interference with employment relationship must show (1) the existence of an employment contract; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the breach of this employment contract; and (4) damages. *Sorrells v. Garfinckel's*, 565 A.2d 285, 289 (D.C.1989).

It is also well established in the District of Columbia that, absent a contract providing that termination may be only for cause or providing for a specific period of employment, an employment relationship is terminable at will by either party. *Minihan v. American Pharmaceutical Ass'n*, 812 F.2d 726, 727 (D.C.Cir.1987). If an employee is considered to be "at-will" he or she may be dismissed by the employer at any time, for "any reason, or no reason at all." *Wemhoff v. Investors Management Corp.*, 528 A.2d 1205, 1208 n. 3 (D.C.1987) (citing *Taylor v. Greenway Restaurant, Inc.* 173 A.2d 211 (D.C.1961)); *Sullivan v. Heritage Foundation*, 399 A.2d 856, 860 (D.C.1979).

Neither party seriously quarrels with these legal principles or with the fact that plaintiffs were at-will employees. There is, however, a dispute as to whether a third party is liable if it interferes with an at-will employment relationship.

In this respect, plaintiffs rely on *Sorrells v. Garfinckel's, supra,* and *Nickens v. Labor Agency of Metropolitan Washington*, 600 A.2d 813 (D.C.1991) for the affirmative of this proposition. Neither decision supports plaintiffs' premise. *Sorrells* involved only the question whether a supervisory employee may interfere with a subordinate's employment without a proper purpose. 565 A.2d at 291. The court did not consider the issue whether an at-will employee may maintain such an action at all. Nor was this issue involved in *Nickens*. There, the court concluded that a genuine issue of material fact existed as to whether plaintiff had an employment contract or whether his employment was at-will. 600 A.2d at 818–19.

In any event, in a more recent case, *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419, 432 (D.C.1996), the D.C. Court of Appeals squarely decided the issue. In that case, the plaintiff, a financial secretary at the Bible Way Church, complained, *inter alia*, that several elders had tortiously interfered with her employment relationship with the Church. The trial court dismissed the intentional interference claim on the basis that there was no employment contract between

plaintiff and the Bible Way Church. The Court of Appeals affirmed, stating

> According to the complaint, Eddyemae Beards was hired by Bishop Williams and, later, rehired by Pastor Silver. The Beards do not allege that at any time there was a formal contract of employment or any agreement between Bible Way Church and Eddyemae Beards fixing a period of time for her employment. . . .
>
> The [plaintiffs] failed to cite in the complaint any facts which, if taken as true, would rebut the presumption of at-will employment. . . . Accordingly, there was no basis for either a breach of contract or a tortious interference with contract claim, and thus both counts one and five were properly dismissed.

680 A.2d at 432–33.

■ Thus, in the *Bible Way* case, the highest court of the District of Columbia decided authoritatively that under an at-will arrangement the prerequisite does not exist for the tort of interference with employment relationship. A third party who interferes with such a tenuous relationship is not liable to the employee since no wrongful breach of contract can result from his interference.[3] To put it another way, if there is no fixed or assured employment there is nothing tangible with which to interfere. Indeed, in one sense the relationship here between the plaintiffs and their employer may be even more tenuous than the usual at-will relationship, for White House personnel serve only at the pleasure of the President. Plaintiffs' tortious interference claim therefore must, and will be, dismissed.[4]

## IV

### *Infliction of Emotional Distress*

Plaintiffs also claim that they are entitled to damages for intentional infliction of emotional distress. That claim is likewise not well founded.

■ To prove intentional infliction of emotional distress plaintiffs must allege that defendants' conduct was extreme and outrageous. *Hoffman v. Hill & Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C.1991). This is a very demanding standard, only infrequently met, and plaintiffs clearly cannot measure up to it on the basis of the facts contained in their complaint. Defendants allegedly accused the Travel Office staff of illegal or otherwise improper activities in the course of their job performance. These accusations, made behind closed doors at the White House, allegedly precipitated the dismissal of the Travel Office employees.

Even construing all the facts in favor of plaintiffs, such conduct does not remotely approach the level of severity required for a cause of action for intentional infliction of emotional distress. It is not "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to

---

3. Some cases regard such activity by a third party as more akin to interference with prospective economic advantage than to interference with an existing contractual relationship. *Europlast, Limited v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1274 (7th Cir.1993); Restatement (Second) of Torts, § 766, comment g. To proceed under this theory, an at-will employee must allege that he had a legitimate interest or expectation in his continued employment. As political employees who served at the pleasure of the President and his current Administration, plaintiffs could not make that claim, and, in fact, they have not done so. *See Hall v. Ford*, 856 F.2d 255, 265–66 (D.C.Cir.1988); *Lyons v. Barrett*, 851 F.2d 406, 410 (D.C.Cir.1988).

4. Given this decision, the Court need not consider directly defendants' contention that plaintiffs fail to allege proximate cause. However this argument, too, may be well taken. Plaintiffs would be hard pressed to show that "but for" defendants' allegations of improper conduct they would have retained their jobs.

Defendants have also argued that plaintiffs' claims are time-barred. Intentional interference with an employment relationship is a claim separate and distinct from defamation. In this case, however, the alleged interference took the form of defamatory writings and statements. Defendants argue that plaintiffs' claims are dressed-up defamation claims which are subject to the one-year statute of limitations, D.C.Code § 12–301(4), rather than the three-year catch-all limitations period for any cause of action which is not "specially prescribed." D.C.Code § 12–301(8). While the Court finds this argument intriguing, particularly in light of our Court of Appeals' recent holding in *Mittleman v. United States*, 104 F.3d 410 (1997), it again need not rest its decision thereon given the other deficiencies in the complaint.

be regarded as atrocious, and utterly intolerable in a civilized society." *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 38 (D.C.) (quoting Restatement (Second) of Torts, § 46), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982); *see also Waldon v. Covington,* 415 A.2d 1070, 1077–78 (D.C. 1980).

The instances in which a claim for intentional infliction of emotional distress has been granted involve conduct of an entirely different order of magnitude. *See, e.g., Clark v. Associated Retail Credit Men of Washington, D.C.,* 105 F.2d 62, 70 App. D.C. 183 (1939) (collection agency hounded plaintiff with hypertension and only partial sight to collect debt and threatened suit, attachment, and garnishment); *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 935–36 (D.C. 1995) (systematic efforts by workmen hired by landlords to harass and intimidate tenants, including brandishing guns), *cert. denied,* —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997); *Great Atlantic and Pacific Tea Co. v. Roch,* 160 Md. 189, 153 A. 22 (1931) (defendant grocer's employee delivered a dead rat wrapped as a loaf of bread); *Bielitski v. Obadiak,* 15 Sask. 153 (1922) (defendant spread rumor that plaintiff's son hung himself). Indeed, if the Court were to sanction the allegations in this case as viable examples of this tort, it may be expected that thousands upon thousands of employee terminations or other employment disputes in business and government would also qualify.

The motion to dismiss with respect to the count alleging intentional infliction of emotional distress will also be granted.

## V

For these reasons, the Court will grant the motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). An Order consistent with the foregoing is being issued contemporaneously herewith.