**POPHAM, HAIK, SCHNOBRICH,
KAUFMAN & DOTY, LTD.**

v.

**NEWCOMB SECURITIES COMPANY,
et al., Appellants.**

No. 84–5118.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 4, 1984.

Decided Jan. 25, 1985.

Richard B. Cooper, New York City, for appellants. Joseph L. Bianculli, Washington, D.C., entered an appearance for appellants.

Steven M. Levine, Washington, D.C., with whom Walter J. Smith, Jr., Washington, D.C., was on the brief, for appellee.

Before WRIGHT and MIKVA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case is the aftermath of an unhappy relationship between a law firm and its client. The Newcomb companies ("Newcomb")—two partnerships and five corporations offering a variety of financial services—hired Popham, Haik, Schnobrich, Kaufman & Doty ("Popham Haik") in early 1981 to provide continuing legal services on commodities and securities issues. The parties agreed that Newcomb would be billed monthly for fees calculated on an hourly basis. All went smoothly until November 1981, when the companies began to fall behind in their payments.

Popham Haik continued to provide services through July 1982. In October 1982, the invoices for February through July were still unpaid, and Popham Haik sued for breach of contract and fraud. Filing counterclaims for fraud, unreasonable fees, and malpractice, the defendants denied liability for their outstanding balance and sought a partial refund of past payments. The district court granted Popham Haik summary judgment on the firm's contract

claim and on all three counterclaims. We now vacate the summary judgment order and remand the case to the district court for trial.

### I. CONTRACT, FRAUD AND UNREASONABLE FEES

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is to be ordered only if "there is no genuine issue as to any material fact." Any doubt is to be resolved against the moving party. *Abraham v. Graphic Arts International Union,* 660 F.2d 811, 814 (D.C.Cir.1981). Still, a party opposing summary judgment may not simply rest on its pleadings; it must offer some support for its version of the facts. Fed.R.Civ.P. 56(e).

Newcomb bases much of its defense, as well as its counterclaims for fraud and unreasonable fees, on its contention that Popham Haik overbilled by charging for hours that either were not worked or were largely wasted. To support this claim, Newcomb submitted discovery answers from Popham Haik and an offer of expert testimony concerning the amount of time various tasks performed by the firm could reasonably have required. Those submissions may well have fallen short of clear and convincing proof, but they certainly sufficed to create a genuine factual issue material both to Popham Haik's contract claim and to Newcomb's counterclaims for fraud and unreasonable fees.

The evidentiary value of Popham Haik's discovery responses lies in their apparent inconsistency with internal firm records used to prepare Newcomb's bills. In interrogatories, Newcomb asked Popham Haik how much time attorneys at the firm spent preparing fifty-four documents listed in the complaint as examples of work done for Newcomb. Popham Haik at first balked at the request, arguing that the internal billing records it had already disclosed enabled Newcomb to answer the interrogatories as easily as the firm. App. 55. The firm complied with a subsequent court order to provide "as complete an answer as now possible" to the interrogatories, App. 62, but it qualified its response by noting that the nature of its billing records limited the precision with which time could be allocated to particular tasks.

Newcomb later deposed Charles Seeger, a senior attorney at Popham Haik, regarding the firm's answers to Newcomb's interrogatories. Seeger testified that he had spent over fifteen hours preparing the answers from the internal billing records, and he expressed confidence that the firm had not underestimated the time devoted to the documents. For example, Popham Haik had allocated four hours to documents collectively identified in the interrogatories as item R, which included "[m]emorandum or documents relating to discussions of Amendments to Newcomb Arbitrage Fund I, efforts with First Bank of Michigan regarding the Pool Offering, change in fee structure of the Fund, amendments to the Limited Partnership Agreement, and the Customer Agreement between Bank of New York and Newcomb Commodities Corporation." App. 47–48. When deposed about these documents, Seeger emphatically rejected the suggestion that the interrogatory answers might have omitted some of the hours that the firm's billing records allotted to item R:

Q: Is it possible that in addition to the entries that you so identified, there are a great many more entries which you were unable to identify just because of the ambiguity of the words used, and so you may have put in a great deal more than four hours simply on the amendments to the limited partnership agreement alone?

. . . . .

A: No, I don't believe that is possible.

. . . . .

Q: May it be that in your printouts there are a great many entries, the meaning of which, due to the passage of time and other factors, is no longer clear to you so that although you can identify a total of four hours of entries that relate to item R, the volume of unidentifiable entries is sufficiently large so that those unidentifiable entries may have been in large measure spent on item R and you have spent many more than four hours on item R?

A: No. That's easy. The vast majority or all of the entries which I could identify to these specific documents reflect that the vast majority of the work that I did for the Newcomb Commodities was not necessarily related to documents. It didn't result in documents.

Q: So that we can exclude the possibility that item R took more than four hours?

1264

A: Yes.

App. 106–08.

The gravamen of Newcomb's argument is that Popham Haik's internal billing records allot far more time to several documents than do the firm's interrogatory answers. Since Popham Haik billed for roughly 90% of the hours listed in the billing records, App. 60, the discrepancies suggest, although they obviously do not establish, that Newcomb may have been billed for hours not worked, or that Popham Haik may have attempted to conceal overreaching.

In response to the interrogatories, for example, Popham Haik allocated a total of 33.6 hours to preparation of a "[m]emorandum relating to State Blue-Sky Laws of eight states and their impact on Newcomb Commodities Corporation and Newcomb Capital Corporation." App. 47, 51, 77, 81–82, 114–15 (items P and ZZ). At deposition, Seeger conceded that that figure excluded more than forty additional hours that the internal billing records appear to identify as devoted to researching, drafting, or reviewing the blue-sky laws memorandum. App. 165–84. Seeger testified that he had excluded some of the hours because the entries in the billing records had been crossed out, but he did not know what the crossing out signified. App. 179–80, 182–84.

Popham Haik argues that Seeger's "difficulty" answering the interrogatories is not probative, because the allocation of time requested by Newcomb was artificial and unreasonable. This explanation may resolve the disparity, but its plausibility is a question for trial. We do not deal here with a discovery request so patently infeasible that no reasonable person could ascribe evidentiary significance to the response. Seeger understood that he was not requested to assign all billed hours to one or another of the listed documents; Newcomb concedes that much of the work performed by Popham Haik did not go into documents. App. 118–21; Appellants' Brief at 26–27. In essence, Newcomb asked Popham Haik only to state, as accurately as possible, how much time it spent on some of the work for which it billed. Seeger testified to the long hours he spent on the firm's response and to his confidence that nothing had been overlooked. A fact finder therefore could hardly be accused of irrationality for giving some weight to discrepancies between the firm's answers and the records from which both those answers and Newcomb's invoice were prepared.

Because we find Popham Haik's discovery responses sufficient to carry Newcomb's defense and the fraud and unreasonable fees counterclaims past summary judgment, we need not decide the significance to be accorded the expert testimony proffered by Newcomb. Newcomb offered its witness, a securities lawyer, to assess the reasonableness of the hours billed by Popham Haik on several different tasks, but when deposed the witness conceded that he had not personally reviewed the firm's billing records and did not intend to do so. Although an expert witness certainly need not have personal familiarity with the facts of a case in order to "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed.R.Ev. 702–703, we leave to the district court's sound discretion whether to admit the testimony proffered in this case.

We find no merit in Popham Haik's contention that the defendants are bound by a former Newcomb officer's "admission" that the services performed by the law firm were "efficient, skillful and professional," and that "[s]o far as I know, there was nothing unreasonable" about the bills submitted to Newcomb. App. 586, 594–95. Although the witness had reviewed the bills on Newcomb's behalf, at the time of his deposition he was apparently no longer in the appellants' employ and consequently had no power to bind Newcomb to his statements. Fed.R.Ev. 801(d)(2)(D). Equally meritless is any suggestion that Newcomb has "acknowledged ... performance" by conceding in its pleadings "an outstanding balance of $169,680.49 for [the firm's] services," Appellee's Brief at 12; Newcomb admitted the existence of "outstanding bills" but was careful to "deny that any bills are due." App. 455, 459, 705. Such game-playing with an opponent's pleadings trivializes the litigation process.

## II. MALPRACTICE

Newcomb bases its counterclaim for malpractice on Popham Haik's advice that an investment offering Newcomb intended to market was not a "security" and hence did not need to be registered with the Securities Exchange Commission, see 15 U.S.C. § 77e (1982). Newcomb alleges that the law was clearly contrary in several jurisdictions

where Popham Haik knew the offering was to be marketed, and that the firm's erroneous advice exposed Newcomb and its principals to substantial federal penalties, *see id.* § 77*l*, 77x. Popham Haik concedes that it counseled Newcomb that the offering need not be registered with the SEC, but the firm maintains that its advice was sound.

The offering in question concerned an investment account to be handled by one of the appellants, Newcomb Management Corporation ("NMC"). Funds invested in the account were to be re-invested by NMC in commodity futures and in cash and "forward" transactions involving foreign currencies and government securities. Futures contracts and forward contracts both call for future delivery of goods, but forward contracts are individually negotiated, while futures contracts are traded on exchanges. *See, e.g., Bache Halsey Stuart, Inc. v. Affiliated Mortgage Investments, Inc.,* 445 F.Supp. 644, 646 (N.D.Ga.1977).

"Security" is defined both by the Securities Act of 1933, 15 U.S.C. § 77b(1) (1982), and the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10) (1982), to include any "investment contract." In *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court set forth a three-part test for investment contracts: a plan qualifies as an investment contract if it "involves [1] an investment of money [2] in a common enterprise [3] with profits to come solely from the efforts of others." *Id.* at 301, 66 S.Ct. at 1104; *accord, e.g., International Brotherhood of Teamsters v. Daniels,* 439 U.S. 551, 558, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979).

Everyone agrees that the NMC plan involved monetary investments, but whether the other two requirements were met is more controversial. The district court determined that the plan did not meet the second *Howey* requirement—"commonality"—because the profit or loss experienced by an individual investor in the plan would not necessarily correlate either with the fortunes of the investors as a group or with NMC's success or failure. Although the court acknowledged that the Fifth Circuit would find commonality anytime the investor's success depended on the skill of the promoter, *see, e.g., SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 479 (5th Cir.1974), it rejected that test as too broad. Following its own decision in *Meredith v. Conticommodity Services, Inc.,* [1980]

Fed.Sec.L.Rep. (CCH) ¶ 97,701 (D.D.C. 1980), the district court concluded that the Fifth Circuit's approach impermissibly collapsed the second element of the *Howey* test into the third.

However sound that judgment may be as a matter of federal law in this circuit, NMC had planned to market its offering in places within the Fifth Circuit as well as places within the Ninth and Tenth Circuits, which have taken similarly expansive views of commonality, *see Commercial Iron & Metal Co. v. Bache & Co.,* 478 F.2d 39, 42 (10th Cir.1973); *SEC v. Glen W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). Popham Haik was apparently aware of these marketing plans, App. 254–55, and knew or should have known that under the Security Act a promoter may be sued and prosecuted "in the district where the offer or sale took place," 15 U.S.C. § 77v (1982). A failure to advise Newcomb that some targeted jurisdictions might deem its plan an "investment contract" could therefore constitute malpractice notwithstanding the more lenient inclinations of the United States District Court for the District of Columbia.

Popham Haik contends, however, that not even the Fifth, Ninth or Tenth Circuit would classify the NMC plan as an investment contract, because the plan allowed investors to direct their funds as they wished, without relying on NMC's financial skills. There is some dispute regarding whether investors in the plan would actually have that freedom, *compare* Appellants' Brief at 51–52 *with* Appellee's Brief at 33–34. This issue of fact is largely moot, however, because all apparently concede that the investors would at a minimum have the *option* of allowing Newcomb to manage their investments, and the Securities Act requires the offer of an investment contract to be registered with the SEC even if purchasers may opt out of those features of the plan that make it an investment contract. *See SEC v. W.J. Howey Co.,* 328 U.S. at 300–01, 66 S.Ct. at 1103–04. Even if the plan required all investors to direct their funds, moreover, the Fifth Circuit, at least, would treat the plan as an investment contract if the investors could be expected in practice to rely on the promoter's advice. *See SEC v. Continental Commodities Corp.,* 497 F.2d 516, 522 (5th Cir.1974).

Popham Haik also argues that the NMC plan is exempt from SEC registration requirements pursuant to 1974 amendments to the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* The amendments give the Commodity Futures Trading Commission ("CFTC") "exclusive jurisdiction" over accounts and transactions involving commodities futures contracts. Because the NMC plan would apparently invest in forward contracts involving foreign currency and government securities, in addition to futures contracts, it is unclear whether the plan would qualify for exemption. The statute by its own terms applies to foreign currency or government securities transactions only if they involve futures contracts, traded on exchanges. *Id.* We consequently cannot say, on the basis of the record before us, that the Commodity Exchange Act so clearly exempted the NMC from SEC jurisdiction that, as a matter of law, Popham Haik's advice did not constitute malpractice. The firm may of course move again for summary judgment if it thinks subsequent additions to the record establish its position more firmly. In any event, the ultimate fact finders may evaluate all the evidence for and against Newcomb's malpractice claim.

Little needs to be said about appellee's other arguments regarding the malpractice claim. Popham Haik contends that Newcomb in effect admitted the soundness of the firm's advice by filing with the CFTC, after the commencement of this lawsuit, a disclosure document substantially similar to the document drafted by Popham Haik for the NMC investment plan. Newcomb, however, denies ever offering the plan in interstate commerce—a necessary predicate for SEC jurisdiction, 15 U.S.C. § 77e (1982)—and Popham Haik has not controverted that denial. Similarly, Popham Haik suggests that Newcomb suffered no injury because it was never prosecuted or sued for failing to register the NMC offering, but Newcomb claims plausibly that in addition to wasting legal fees it lost potential profits when an intended public offering of the NMC plan had to be aborted.

### III. CONCLUSION

■ Summary judgment is not to be granted merely because the moving party appears likely, or even very likely, to prevail at trial; the procedure is reserved for cases where the material facts are so clear that a trial would be an empty exercise in formalism. No different standard applies to actions for unpaid legal fees, however painful the consequences for law firms seeking their due for services rendered. Given the often prohibitive expense of trial, the high standard of Rule 56 doubtless allows some clients to evade their contractual obligations to attorneys by interposing objections that after full consideration would ultimately prove baseless. That, however, is a problem faced by all plaintiffs. Members of the bar may generally enjoy easier access than others to the legal system, but they have no inalienable right to purchase justice at wholesale.

■ There may or may not be any merit to the defenses and counterclaims Newcomb has presented in this case. All that seems certain now is that genuine issues of material fact cloud both Popham Haik's contract claim and Newcomb's counterclaims. We therefore vacate the order of summary judgment as premature and remand this case to the district court for further proceedings.

*It is so ordered.*