Cornelius J. MINIHAN, Appellant,

v.

AMERICAN PHARMACEUTICAL ASSOCIATION.

No. 86–5172.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1987.

Decided Feb. 27, 1987.

Alan Banov, Washington, D.C., for appellant.

Michael H. McConihe, Washington, D.C., for appellee.

Before EDWARDS, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Cornelius J. Minihan appeals from a summary judgment of his breach of employment contract claim against his former employer, American Pharmaceutical Association ("APA"). Minihan claims to be the beneficiary of a contract that guaranteed him "permanent" employment for "as long as [he] performed his job satisfactorily and wanted to keep that job." By discharging him without cause, Minihan argues, APA breached that contract. The district court concluded that Minihan had presented no evidence contradicting the assumption that his employment contract merely provided for terminable-at-will employment and

therefore granted summary judgment for the defendant 624 F.Supp. 345 (1985). Minihan appeals. The question for us is the same as the question presented to the district court: does the record show "that there is no genuine issue as to any material fact and that [APA] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Having reviewed the record in light of the applicable law, we conclude that summary judgment was warranted in this case.

## I.

Because APA, the moving party, carries the burden of proving the lack of any genuine issue of fact, we must view the available facts in the light most favorable to Minihan, *see Popham, Haik, Schnobrich, Kaufman & Doty, Ltd. v. Newcomb Securities Co.*, 751 F.2d 1262, 1263 (D.C.Cir. 1985). On March 23, 1982, Minihan interviewed for a job as APA's Director of Publications. Dr. William Apple, APA's president, conducted the employment interview alone and orally offered Minihan the position. Apple told Minihan this would be "full time, permanent employment with the Association." He also "took special pains to point out the number of staff members whom he had worked with for many years, and he mentioned them by name." Although Apple did not explain what he meant by "permanent employment," Minihan left the interview believing it meant that "as long as [he] performed his job satisfactorily ... [he] would have permanent employment with the Association for as long as [he] desired." The next day, March 24, 1982, Apple and Minihan signed a letter that described his employment as "Full time, Permanent," and referred to the American Pharmaceutical Association Personnel Policy Manual as containing additional conditions of employment. The manual does not specifically define the term "permanent employment," but does describe "temporary employment" as other than "ongoing."

The parties agree that over the course of the next one and one-half years Minihan performed his job well. However, in September 1983, Apple approached Minihan and told him that because the Association was having economic problems, the trustees had decided to abolish the Publications Division and eliminate Minihan's position. Apple told Minihan he could keep his job until the end of the year. Minihan then began searching for new employment. In early December 1983, Apple approached Minihan again, asking him to "[s]tay on as long as you can until you get a new position," whereupon Minihan stopped looking for a job. Apple died shortly thereafter. On December 30, 1983, the Association's interim president, Maurice Bectel, informed Minihan that his position would be terminated as originally planned the next day. Minihan left APA on December 31, 1983.

Fifteen months later, Minihan filed a lawsuit in the district court alleging, *inter alia*, that APA had breached the contract that guaranteed Minihan "permanent" employment, meaning employment for as long as he did his job well. Federal jurisdiction was based on diversity of the parties, 28 U.S.C. § 1332 (1982), and both parties agree that District of Columbia law governs. APA moved for summary judgment arguing that, as a matter of law, Minihan's contract did not provide for lifetime employment, so his dismissal was permissible. The district court granted APA's motion and Minihan now appeals.

## II.

Both parties agree that the employment contract consists of the March 24, 1982 letter and APA's Personnel Manual, and provides for "permanent" employment. It is well-settled District of Columbia law that in the absence of clearly expressed contrary intent, "the assumption will be that—even though [the parties] speak in terms of 'permanent' employment—the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party." *Sullivan v. Heritage Foundation*, 399 A.2d 856, 860 (D.C.1979), quoting *Littell v. Evening Star Newspaper Co.*, 120 F.2d 36, 37 (D.C.Cir. 1941).

Still, "terminable-at-will" is merely an assumption (perhaps more accurately described as a "rebuttable presumption"), which applies only when there is no evidence of the contracting parties' contrary intent, *see Hodge v. Evans Financial Corp.*, 707 F.2d 1566, 1569 (D.C.Cir.1983). Minihan was certainly free to introduce evidence showing that he and Apple agreed to lifetime employment (subject to dismissal only for good cause). With such evidence, Minihan would be entitled to a full trial, having "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ Appellant contends that he has put forward evidence requiring jury consideration. Minihan points to his testimony describing the job interview, during which Apple allegedly "took special pains" to emphasize the normal longevity of APA employees' tenure. It is argued that a jury could believe Apple meant by these statements that Minihan could keep his job as long as he performed it well. Yet assuming (as we must) that Minihan quotes Apple correctly, Apple's statements cannot be construed as promising Minihan lifetime employment. Contracting parties may rebut the presumption of terminable-at-will employment only by "*stating clearly* their intention to do so," *Littell*, 120 F.2d at 37 (emphasis added). Apple's declaration does not meet that legal test. Indeed, it tends to contradict Minihan's case; why would Apple assure Minihan that he had excellent prospects of long term employment if Apple meant to bind APA to a lifetime employment contract? Similarly, appellant's contention that Apple expressed an exceptional degree of regret at having to dismiss Minihan, and made special accommodations to make Minihan's departure less stressful, does not support appellant's claim. Those actions, at most, suggest Apple felt uncomfortable about Minihan's plight, but they hardly qualify as "clear statements" of a previous intent to grant Minihan lifetime employment.

Minihan also offers the testimony of APA's Business Division Director, Virginia Weschler, apparently for the purpose of showing that other APA officials understood Minihan to have lifetime employment. During her deposition, Ms. Weschler testified the term "permanent" employment is not defined in APA's Personnel Manual, and that in fact "[p]ermanent doesn't have a meaning." Weschler also said *her own* employment letter described her position as "permanent," but said she viewed this term as "irrelevant" because "I assume that as long as there's a job to be done and I'm doing it to the Association's satisfaction ... I have a job. But on the other hand, I don't rely upon anything like that. *I sort of see myself as almost a day-to-day person.*" This testimony, in our view, does not at all support Minihan's contract interpretation. Weschler merely described *her own* employment agreement; not *Minihan's* contract. And her declaration that she perceives herself a terminable-at-will employee undercuts Minihan's argument that Apple generally used the term "permanent" employment to mean "lifetime" employment.

■ The remaining "evidence" of the parties' intent upon which appellant relies, consists of his testimony concerning how he alone interpreted the terms of his employment. The record contains statements by Minihan such as this:

Q. [W]hat did the word "Permanent" mean *to you?*

A. Permanent meant *to me* that as long as I performed my job satisfactorily, which I did, that I would have permanent employment with the Association for as long as I desired....

But this testimony is patently irrelevant. Evidence of Minihan's subjective belief in the permanence of his employment does not create a material issue as to whether he and Apple *together* agreed to lifetime employment. *See Sullivan*, 399 A.2d at 859.

■ The Supreme Court recently held that a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, — U.S. —, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On the evi-

dence presented, no reasonable jury could find that Minihan and Apple intended to contract for lifetime employment, so the presumption stands unrebutted that Minihan's employment was terminable at APA's discretion.[1]  Summary judgment in favor of the defendant was therefore warranted;[2] the district court's order is

*Affirmed.*

See also, D.C., 655 F.Supp. 26.

1. Actually, the parties did not agree to pure terminable-at-will employment; the Personnel Manual outlined conditions to Minihan's at-will termination, such as notice and severance pay. Minihan also could be terminated for several enumerated causes, in which case he would not be entitled to notice or severance pay.

2. The other claimed "material" facts in dispute likewise do not merit a full trial.  The appellant contends that, the "lifetime employment" issue aside, a genuine issue exists concerning whether APA had good cause to terminate him, citing *Chai Management, Inc. v. Leibowitz,* 50 Md.App. 504, 439 A.2d 34 (1982) for the proposition that employment contracts for a stated term may be terminated before the end of the term only for just cause.  Since Minihan's contract was not for a stated term, this legal principle does not apply.  Furthermore, Minihan's employment contract allowed dismissal *either* at the employer's discretion, *or* for good cause.  Since APA did not purport to terminate Minihan for cause, the "issue" of whether good cause existed is not material to the case.

Minihan also contends he presented material issues of fact concerning whether APA's termination of his employment was in violation of an implied contractual covenant to act in good faith.  Although some jurisdictions have recognized this claim as somewhat analytically distinct from the more orthodox issue of breach of an employment contract's express terms, *see, e.g., Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981), Minihan offers no authority supporting such a cause of action in the District of Columbia, nor can we find any.