**Dan E. MOLDEA, Plaintiff,**

v.

**The NEW YORK TIMES COMPANY, Defendant.**

**Civ. A. No. 90–2053.**

United States District Court, District of Columbia.

Jan. 31, 1992.

Roger Charles Simmons, Frederick, Md., for Dan E. Moldea.

Bruce W. Sanford, Baker & Hostetler, Washington, D.C., for New York Times Co.

## MEMORANDUM

JOHN GARRETT PENN, Chief Judge.

This case is before the Court on defendant, the New York Times Company's Motion for Summary Judgment. On February 19, 1991, the Court heard oral arguments. After careful consideration of the motion, the opposition thereto, and the entire record in this case, the Court will grant summary judgment in favor of the defendant.

### I.

The facts may be briefly stated. Plaintiff is the author of *Interference: How Organized Crime Influences Professional Football (Interference)*. In July 1989 William Morrow and Company, Inc. published *Interference*. On September 3, 1989, defendant, the New York Times Company, Inc. published a book review of *Interference*. This review was written by Gerald S. Eskenazi.

On August 24, 1990, plaintiff brought suit against defendant, seeking damages for libel and invasion of privacy as a result of the publication of Eskenazi's review. The following paragraph of defendant's above referenced book review forms the basis of plaintiff's complaint:

> .... For there is some really hot stuff in here, albeit warmed over. [Moldea's] examination of the 1980 Super Bowl ticket selling scandal involving Georgia Frontiere, the multimillionaire owner of the Los Angeles Rams, and her husband, Dominic, who went to prison for tax evasion, shows that greed has no bottom line. And [Moldea] raises truly disturbing questions about connections between some owners and friends who may be mob-connected, as well as about newspapers and television shows that regularly pander to people who bet on sports events. But there is too much sloppy journalism to trust the bulk of this book's 512 pages—including its whopping 64 pages of notes.

Defendant responded with the present summary judgment motion, arguing that no material facts are at issue, and as a matter of law, under the First Amendment, plaintiff has not set forth any grounds for relief.

## II.

█ Summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment must prove the lack of any genuine issue of fact. However, the motion "is not defeated simply by a bare opinion or an unaided claim that a factual controversy persists." *Alyeska Pipeline Service Co. v. U.S. E.P.A.*, 272 U.S.App. D.C. 355, 856 F.2d 309, 314 (D.C.Cir.1988) (footnote omitted). When the party opposing the motion for summary judgment does not offer counter-affidavits or other evidentiary material supporting his contention that an issue of fact remains, the evidence presented by the movant must be accepted as true. *See* Fed.R.Civ.P. 56(e). While it is true, generally, that the Court must view the available facts in the light most favorable to the plaintiffs, *Minihan v. American Pharmaceutical Ass'n*, 259 U.S.App. D.C. 10, 812 F.2d 726, 727 (1987), in the instant case, the evidence presented by the defendant must be accepted as true.[1] Thus, because there are no material facts at issue, the Court may address the question of law.

## III.

█ Defendant argues that the complaint should be dismissed because the book reviewer's conclusion that plaintiff's book contained "too much sloppy journalism" is a nonactionable statement of opinion. Specifically, defendant asserts that under First Amendment law, a plaintiff in a libel action bears the burden of proving that a false statement of fact was published about him. Defendant argues that "too much sloppy journalism" cannot be proved true or false, but rather is an unverifiable opinion. Thus, defendant asserts that the essential element of falsity is lacking, and summary judgment in its favor is appropriate.

Plaintiff opposes summary judgment, arguing that defendant's book review contains actionable statements. Specifically, plaintiff argues that to deny summary judgment the Court need only find that statements in the review are sufficiently factual to be reasonably capable of being proved false, or that they imply undisclosed assertions of fact that are capable of being proved false or misleading.

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), the Supreme Court was asked to recognize "in addition to the established safeguards ... still another First Amendment-based protection for defamatory statements which are categorized as 'opinion' as opposed to 'fact'." *Milkovich*, 110 S.Ct. at 2705. Respondents in that case, relied on dicta in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), for this proposition.[2] In holding that the First Amendment does not require a separate privilege to protect statements labeled as "opinions", the Court emphasized that *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), "stands for the proposition that a statement on matters of public concern must be provable as false before there can be liability under state defamation law ... where a media defendant

---

1. Because plaintiff's opposition did not contain a separate statement of material facts, the Court may properly conclude that plaintiff has conceded to defendant's statement of material facts. Local Rule 108(h).

2. Specifically, the Court in *Gertz* stated that:

"Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact."
418 U.S. at 339–340, 94 S.Ct. at 3007.

is involved." *Milkovich*, at 2706. Further, the Court stated that *Hepps* ensures that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.* at 2706. Thus *Milkovich* did not change prior First Amendment law but simply rejected a separate constitutional privilege for statements of "opinion".

The threshold question, then, is whether or not plaintiff has met his burden of showing that the statement made in defendant's book review is provable as false. Plaintiff contends that several statements in the book review are actionable because they are sufficiently factual to be proven false and they are defamatory because they attack plaintiff's competence and integrity in his profession. However, the Court will focus only on the portion of the book review upon which the complaint is based—"too much sloppy journalism".[3]

It is settled that "the reasonable reader ... perus[ing] [a] column on the editorial or Op–Ed page is fully aware that the statements found there are not 'hard' news like those printed on the front page or elsewhere in the news sections of the newspaper" *Ollman v. Evans*, 750 F.2d 970, 981 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). Further, the Court concludes that a book re-

view is similarly the type of article which the reasonable reader knows is comprised of the reviewer's opinion. Upon examining the statement at issue—"too much sloppy journalism"—in such context, it is evident that it is an unverifiable opinion, and is thus not actionable under libel law. In *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.* 838 F.2d 1287, 1300 (D.C.Cir.1988), the court determined that a newspaper articles' statements characterizing an attorney's oral argument as " 'crude', 'ugly', 'pernicious', and 'breathtaking in its daring' ... are clearly statements of opinion dependent upon personal perspective." Because the Court finds that the statement on which the complaint is based similarly exemplifies a description of a literary work, from one's personal perspective, it must grant defendant's motion.

## IV.

■ Plaintiff's complaint also states a claim for false light invasion of privacy. As a matter of law "to recover on a false light theory, plaintiff must show publication of private information which places him in a false light...." *See e.g. Dresbach v. Doubleday & Co.*, 518 F.Supp. 1285 (D.D.C.1981). Plaintiff cannot meet the threshold burden of showing that private information was published because the publication of over 28,000 copies of *Inter-*

---

**3.** Specifically, plaintiff points to the following statements, the underlined portions of which he claims have defamed him. The Court need not address these statements, however it finds that each statement is either a supported statement of fact or a nonverifiable opinion, and thus non actionable under libel law:

(1) "For there is some really hot stuff in here, *albeit warmed over* ";

(2) "Mr. Moldea is *obsessed, for example, with Joe Namath* ";

(3) He [Moldea] says that, as a rookie, the New York Jets' quarterback roomed with 'Joe Hirsch, who wrote a betting line and an inside information sheet on professional sports.' "

"Heady revelations—*except* that the courtly *Mr. Hirsch happened to be the racing columnist and chief reporter for the Morning Telegraph* (now the Racing Form). He still is. *He never picked horses, never wrote 'an inside information sheet'.* ' He is in essence, the writer for the world of horse racing"

(4) Mr. Moldea tells as well of Mr. Namath's 'guaranteeing' a victory in Super Bowl III

*shortly* after a *sinister meeting* in a bar with a member of the opposition, Lou Michaels, the Baltimore Colts' place-kicker. *The truth is that the pair almost came to blows after they both had been drinking;* and Mr. Namath's well-publicized 'guarantee' came about quite innocently at a Miami Touchdown Club dinner when a fan asked him if he thought the Jets a chance. "We'll win. I guarantee it,' Mr. Namath replied";

(5) *He revives the discredited notion that Carroll Rosenbloom ... met foul play when he drowned in Florida 10 years ago* ";

(6) "The Colts 'again refused to send in kicker Myhra to end the game' with a field goal, he complains. *What he doesn't state in his text is that Steve Myhra was among the worst place-kickers in the league*, having missed three extra points and more than half his field-goal attempts during the season";

(7) "But there is *too much sloppy journalism to trust the bulk of this book's 512 pages— including its whopping 64 pages of notes*";

*ference,* is not a private event. *See* Complaint. Thus summary judgment will be granted in favor of defendant on plaintiff's second claim of relief.

## V.

In sum, the Court concludes that none of the parties has set forth any specific facts as being in issue and plaintiffs' claim against the defendant is not actionable as a matter of law. Thus pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court will grant summary judgment in favor of the defendant.